WM. LALOR, Respondent, v. JAMES S. MCDONALD'S ADMINISTRATOR, Appellant.

St. Louis Court of Appeals, April 21, 1891.

1. **Master and Servant:** RELEVANCY AND ADMISSIBILITY OF EVIDENCE. A servant sued his master for services rendered. The master introduced evidence tending to show that the servant, owing to an injury theretofore received by him. was unable to render efficient physical service. The servant offered in evidence in rebuttal a letter written by the master, and stating that he, the servant, had a thorough knowledge of the business in which he was engaged. *Held* that this letter was relevant and admissible as tending to show that the services of the servant were valuable, notwithstanding his disability to perform severe physical labor.

2. **Practice, Appellate:** CHANGE OF THEORY BY APPELLANT. When the appellant in the trial court defends an action against him on the theory, that the services sued for were to be paid for and had been fully paid for by him, and asked and obtains instructions on that theory, he cannot complain of an instruction given for the respondent, because it assumes that the services were not intended as a gratuity.

Lalor v. McDonald's Adm'r.

3. ————: WEIGHING THE EVIDENCE. In determining whether a verdict is excessive in an action at law, this court will not pass upon the credibility of opposing witnesses and weigh their evidence.

*Appeal from the St. Louis City Circuit Court.* — HON. DANIEL DILLON, Judge.

AFFIRMED.

*Edmond A. B. Garesché*, for appellant.

*D. P. Dyer*, for respondent.

BIGGS, J.—This is an action in *assumpsit* to recover for services rendered by the plaintiff to James S. McDonald, deceased, from the first day of January, 1876, to the eighth day of October, 1888. The action was in the form as for a *quantum meruit*, in which the work or service was placed at the sum of $2,340. Credits to the amount of $500 were admitted, leaving a balance of $1,840, for which the plaintiff prayed judgment.

The answer of the administrator was a general denial, and a counterclaim for board, etc., of the alleged value of $236.50, for which a judgment was asked. The jury returned a verdict in the plaintiff's favor for $1,423.85, and the court entered judgment accordingly.

On this appeal the defendant complains of the admission of incompetent evidence ; the giving of an erroneous instruction on the plaintiff's application; and, lastly, that the verdict and judgment are excessive.

Before we proceed to the discussion of the assignments, it will be necessary to a proper understanding of what we may have to say to state briefly the substance of the evidence adduced at the trial. The plaintiff entered the defendant's service as early as 1866. The latter, at that time and up to the date of his death, was the owner of rock quarries, and was chiefly engaged in furnishing macadam for streets, highways and other

improvements. The plaintiff was engaged in the work about the quarries, and in the delivery of macadam and stone. In 1870 the plaintiff went to Ireland, but he returned within a few months and again resumed work for the deceased. It is conceded that, from 1870 to 1876, the plaintiff was employed and paid by the month. The only conflict in the evidence on this point was in respect of the amount he received. The wife of the deceased was the principal witness for the defense. She testified that, after 1876 and up to 1887, the plaintiff was employed by the day, and was paid for the work when performed; that, from the first day of June, 1876, to the eighth day of October, 1888, he was paid by the deceased for work done the sum of $933.22; that in January, 1885, he received the sum of $15 in full payment of all demands; that, from 1880 to 1887, he was in delicate health and could do but little manual labor; that, in 1887, he started for Ireland, was crippled on the way, returned to St. Louis, and that, from that time until the death of the deceased, he boarded with them, for which he was indebted in the amount stated in the counterclaim.

On the other hand the plaintiff's evidence tended to prove that, from January, 1876, until January, 1886, the plaintiff was to receive for his work the sum of $30 per month, and that, after 1886, $15 per month was agreed on. The plaintiff's sister testified that she received all money paid on account of her brother's work, and that during the time he did not receive to exceed $500; that her brother was able to, and did during the whole time, render the deceased good service, except for a short time after his return in 1887; that she was present when the $15 was paid, and that it was received on account only, and not in settlement of all demands. The plaintiff then introduced several witnesses, who testified that they knew that the plaintiff had been in McDonald's employ, and that his services were reasonably worth from $15 to $30 per month.

The plaintiff read in evidence, in rebuttal, the following letter:

> "5148 EASTON AVENUE, ST. LOUIS, MO.,
> July 1, 1887.

"*G. David, Esq.*

"DEAR SIR:—Your favor of the twenty-ninth ultimo to hand. In reply to your inquiries, desire to say Wm. Lalor's contract to supply material for cellars and roads has not been less than $1,000 to $1,500 clear. When the news came that he was injured for life on the steamer, these contracts were given to other parties to Lalor's great loss, as it was the only means by which he could make a living, and a sufficient ground to lay claim for damages against the company.

> "I remain yours truly,
> "JAS. S. McDONALD."

"P. S.—Lalor had a thorough knowledge of this business, and is a perfectly reliable man. I forgot telling you we received your letter and one from Mr. ——. We leave all in your hands; do not go to law, if possible."

This letter requires some explanation. There is an intimation in the record that McDonald was accustomed to secure his own contracts in Lalor's name, and that he (McDonald) would act as bondsman. We assume that those were the contracts referred to in the letter. The plaintiff was injured on a steamer, and the letter was written with the view of securing substantial damages from the steamship company. The defendant's counsel objected to the introduction of this letter in evidence, and the action of the court in permitting it to be read to the jury constitutes the first assignment.

It is earnestly argued that the contents of this letter were entirely immaterial and irrelevant to any issue in the case, and only tended to prejudice the jury against the deceased. Counsel may be right to some extent in the last statement, but we are not prepared to concur in the first. The testimony of Mrs. McDonald

was to the effect, that the plaintiff, after 1880, was in delicate health, was not able to do hard manual labor. In the letter the deceased stated that the plaintiff possessed a thorough knowledge of the business. From this it might be argued with fairness that the deceased did not employ the plaintiff solely on account of his physical ability to do heavy work, but in order to secure the benefit of his experience and technical knowledge of the business. It seems that the deceased attached a good deal of importance to this fact. Hence, we conclude that the letter had some bearing on the value of the plaintiff's services, and we must, therefore, overrule the assignment.

The next assignment pertains to the plaintiff's first instruction, which reads:

"If the jury believe from the evidence that the plaintiff performed labor and services for James McDonald, and at his instance and request, then in the absence of any contract or agreement between said McDonald and plaintiff to the contrary, the law will imply a promise from said James McDonald to pay the plaintiff for such work and labor what the same are reasonably worth. And if you further find from the evidence that the plaintiff, between the first of January, 1876, and the first of October, 1888, did perform labor and services for the said McDonald, and that there was no contract or agreement between said McDonald and plaintiff that said services should not be paid for, or that a certain agreed price should be paid therefor, then you will find a verdict for the plaintiff for such an amount, as the evidence in the case satisfies you such labor and services were reasonably worth, less any amount you may find from the evidence was paid by the said McDonald to the plaintiff on account of such labor and services."

If we rightly understand the objection made to this instruction, it is that it was error for the court to assume, as it did in the instruction, that the plaintiff's services were not intended as a gratuity, because the plaintiff was a first cousin of the deceased, and made his

home with him, and that because of this close relationship the law would not indulge in the implication that the services, if rendered, were to be paid for. It will be granted that there may be cases, in which the principle, which the defendant's counsel invokes, is and ought to be applied. But in the present action the objection is without force, because it is brand new in this court. The entire defense proceeded upon the theory, that it was expressly understood that the plaintiff was to be paid, and that he was actually paid in full for all labor performed by him. The instructions asked by the defendant, and which were given by the court with some modifications in other respects, proceeded upon that theory, in which there was not a suggestion or even a hint that the services were intended as a gratuity. The issues, made by the evidence and submitted to the jury by the instructions, were the value of the work, how much had been paid, and what, if anything, was due. We have read with interest the argument presented by the defendant's counsel, but we have been unable to discover any merit in this assignment. We think that the issues in this case were submitted to the jury under instructions that were unexceptionable. This assignment will likewise be overruled.

Lastly, it is claimed that the judgment is excessive. The judgment was for several hundred dollars less than the amount claimed. As there was direct conflict in the evidence on all material issues, it is impossible for us to say and demonstrate that the jury erred as to the amount of their finding. The plaintiff's sister said that only $500 had been paid. We must confess, that to us her evidence on this point is not very clear and satisfactory ; and we freely admit that the testimony of Mrs. McDonald on the same subject is far more satisfactory ; but the credibility of these witnesses and the weight to be given to their testimony were questions for the jury. We are powerless to review such questions.

The judgment of the circuit court will be affirmed. All the judges concur.